IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 18-20259 |
| BETH A. MCQUAIG, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| THE CARDINAL GROUP, LLC, | ) | |
| | ) | |
| Creditor/Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BETH A. MCQUAIG, | ) | |
| | ) | |
| Debtor/Respondent. | ) | |

## OPINION AND ORDER

Pursuant to notice, this matter came on for continued hearing on confirmation. The Cardinal Group, LLC ("Cardinal") objected (ECF No. 13) (the "Objection") to confirmation of Debtor's chapter 13 plan (ECF No. 2). Specifically, Cardinal objected to Debtor's characterization of a debt owed to Cardinal as a secured claim and argued that it was a lease, and therefore, Debtor must assume or reject it under 11 U.S.C. § 365. At the hearing, the Court gave the parties an opportunity to brief the issue: does the contract (Claim No. 3 at 4-9) (the "Agreement") between Debtor and Cardinal create a lease or a security

agreement? Having considered the relevant law on the issues, the parties' submissions, and the record, Cardinal's Objection will be sustained for the reasons stated below.

## STATEMENT OF UNDISPUTED FACTS

The following facts are not in dispute:

1. Cardinal is a Kentucky limited liability company with its principal place of business in Paducah, Kentucky, that offers rent-to-own portable buildings, including cabins, barns, sheds, and portable garages. (Claim No. 3 at 4.)

2. Debtor and Cardinal entered into the Agreement on November 4, 2014, whereby Debtor would rent-to-own a 10x16-foot side lofted barn (the "Property"). (Id.)

3. In pertinent part, the Agreement provides:

   > This is a lease-purchase agreement. [Debtor] will not obtain ownership of the Property until the [Debtor] has made 48 rental payments equal to $6,739.20 (excluding taxes), the amount necessary to acquire ownership. This amount DOESN'T include any fees or other charges, as described in more detail below. [Debtor] will not own the [P]roperty until amount is paid in full.

   (Id.)

4. The Agreement is titled "48 Month Purchase Agreement & Disclosure Statement." (Id.)

5. The "Term" of the Agreement is defined as a one-month period. (Id. at 5.)

6. The Agreement provides that Debtor could renew it for a subsequent month, each month, paying the rental fee prior to the subsequent month until the sum of

AO 72A
(Rev. 8/82)

Debtor's total lease payments was equal to the full price of the Property, at which point Debtor would own the Property. (Id. at 5-6.) Specifically, Debtor would have to make 48 monthly payments of $140.40[1] to pay the $6,739.20 amount in full and obtain ownership of the Property. (Id. at 6.)

7. The Agreement also provides: "After delivery of the Property to [Debtor], [Debtor] may terminate this Agreement upon expiration of any Term by voluntarily surrendering the Property to [Cardinal] in its original condition, normal wear and tear excepted, without paying any fee for such termination." (Id. at 5.)

## CONCLUSIONS OF LAW

There are two issues before the Court: (1) whether the Agreement is a lease that must be assumed or rejected by Debtor under 11 U.S.C. § 365 or is a security agreement, and (2) whether Kentucky or Georgia law controls in determining whether the Agreement is a lease or security agreement. The Court will address the second issue first, and then turn to whether the Agreement is a lease or a security agreement.

A. **Kentucky Law Governs Whether the Agreement is a Lease or Security Agreement.**

The Agreement contains a choice-of-law provision indicating that Kentucky law

---

[1] A monthly payment was $140.40 in rent plus $8.42 in sales tax, for a total payment of $148.82 per month. Upon initially leasing the Property, Debtor made a non-refundable down payment of $297.64, which amount was applied to the first two monthly payments.

governs it. Cardinal contends that the choice-of-law provision is controlling and asserts that the Agreement qualifies as a lease under both Kentucky and Georgia law. Debtor appears to agree that Kentucky law applies in determining whether the Agreement is a lease or a security agreement.[2]

To determine whether the Agreement is a lease or a security agreement, the Court will enforce the choice-of-law provision and look to Kentucky law. See Citi-Lease Co. v. Entm't Family Style, Inc., 825 F.2d 1497, 1499 (11th Cir. 1987) (applying New Jersey law, per choice-of-law provision in contract, "to determine whether the contract gave rise to a lease or a security interest"). Georgia courts enforce choice-of-law provisions unless doing so "would be contrary to the public policy or prejudicial to the interest of th[e] state." In re Johnson, 587 B.R. 195, 199 (Bankr. M.D. Ga. 2018) (quoting SC-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc., 283 Ga. 426, 428 (2008)). In this case, there is no public policy reason against application of Kentucky law and application of Kentucky law would not be

---

[2] Debtor argues that under Kentucky law, Georgia law governs the interpretation of the Agreement. In support of her argument, Debtor refers to Kentucky Revised Statute ("KRS") § 355.2A-106, which provides that "[i]f the law chosen by the parties to a consumer lease is that of a jurisdiction other than a jurisdiction in which the lessee resides ... or in which the goods are to be used, the choice is not enforceable." Debtor also cites KRS § 355.9-301, which provides that "[w]hile collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a possessory security interest in that collateral." Read together in the context of this case, these Kentucky statute provisions indicate that a lease is governed by Georgia law if the lessee resides in Georgia or if the goods are to be used in Georgia; and in the case of security interests, Georgia law governs the issues of perfection, the effect of perfection or non-perfection, and priority if the collateral is located in Georgia.

prejudicial to the interests of the state of Georgia. Accordingly, the Court will apply Kentucky law to determine whether the Agreement is a lease or a security agreement.

### B. The Agreement Creates a Lease, not a Disguised Security Agreement.

In Kentucky,[3] whether a lease is a true lease or creates a security interest is determined by Kentucky's version of the Uniform Commercial Code, codified at KRS § 355.1-101 *et seq.* KRS § 355.1-203 directly addresses how to determine whether an agreement creates a lease or a security agreement and in pertinent part provides:

> (2) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
> (a) The original term of the lease is equal to or greater than the remaining economic life of the goods;
> (b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> (c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> (d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

KRS § 355.1-203(2).

Pursuant to KRS § 355.1-203(2), as a threshold matter, the Court must determine

---

[3] As Cardinal correctly points out in its brief, the relevant law is identical in Kentucky and Georgia. Compare KRS § 355.1-203, with O.C.G.A. § 11-1-203.

5

whether Debtor has a right to terminate the Agreement early. If the Agreement does provide Debtor with an early termination right, the inquiry ends, and the Agreement does not qualify as a security agreement under KRS § 355.1-203(2). However, if Debtor has no early termination right then the factors listed in clauses (a) through (d) of KRS § 355.1-203(2) must be considered to determine if the Agreement creates a security interest.

In looking at the threshold inquiry required under KRS § 355.1-203(2), the Court must now address Debtor's argument that the duration of the Agreement is ambiguous. Debtor asserts that the word "Term" as used in the Agreement is ambiguous and argues that using principles of contract interpretation, the ambiguous language should be construed to create a term of 48 months.[4] (ECF No. 24.) Further, Debtor argues that a term of 48 months, combined with other factors such as (1) the consumer/merchant language of the Agreement, (2) the risk of loss being shifted to Debtor, and (3) the fact that the "total cost" of the Property equals the amount of a 48-month lease payment, shows that the Agreement constitutes a security agreement, not a lease.

Cardinal argues that the text of the Agreement is plain and unambiguously indicates renewable one-month terms. (ECF No. 25.) Moreover, Cardinal asserts that

---

[4] Debtor asserts that the word "Term" as used in the Agreement may be fairly understood in more than one way—as either 48 months or one month—and is therefore ambiguous. Debtor contends that this ambiguity exists because (a) "48 Month Lease Agreement" is listed at the top of each page of the Agreement and (b) "Term" is defined as "one month" in paragraph 2 of the Agreement. Debtor takes the position that this ambiguity must be construed against Cardinal, the drafter, and must result in a "Term" of 48 months. (ECF No. 24 at 2.)

because the "Term" of the Agreement is only one month, the Agreement is a true lease considering that Debtor can terminate it only at the end of a term and Cardinal retains title to the Property until all 48 rental payments are made.

Ambiguity exists if a contract's "language is reasonably susceptible of different constructions." Journey Acquisition-II, L.P. v. EQT Prod. Co., 830 F.3d 444, 452 (6th Cir. 2016) (citing Blevins v. Riedling, 158 S.W.2d 646, 648 (Ky. 1942)).[5] However, not every inconsistency warrants a finding of ambiguity. Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003). Where no ambiguity exists, courts will determine the parties' intentions using only "the four corners of the instrument" and the plain meaning of the text of the agreement. Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).[6] The first step to determining whether a contract is ambiguous is to look at the document itself, in its entirety. City of Louisa v. Newland, 705 S.W.2d 916, 919 (Ky. 1986) ("Any contract or agreement must be construed as a whole, giving effect to all parties and every word in it if possible.").[7]

In determining whether an ambiguity exists, a summary of the relevant wording of

---

[5] See also Capital Color Printing, Inc. v. Ahern, 661 S.E. 2d 578, 583 (Ga. Ct. App. 2008) (citing Inv. Props. Co. v. Watson, 628 S.E. 2d 155, 159 (Ga. Ct. App. 2006)).

[6] See also O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."); Kwok v. Delta Air Lines, Inc., 994 F. Supp. 2d 1290, 1294 (N.D. Ga. 2014); Fix v. McAllister, 615 S.E.2d 547, 550 (Ga. Ct. App. 2005).

[7] See also Fannie Mae v. Las Colinas Apartments, LLC, 815 S.E.2d 334, 336-37 (Ga. Ct. App. 2018) (citing Y.C. Dev. Inc. v. Norton, 806 S.E.2d 662, 666 (Ga. Ct. App. 2017)).

7

the Agreement is in order. The Agreement is styled "48 Month Lease Agreement," followed by Cardinal's business address and phone number, then subtitled "(Month to Month)." (Claim No. 3 at 4.) Under that heading on the first page is "48 Month Purchase Agreement & Disclosure Statement." (Id.) Each of the remaining pages of the Agreement include the heading "48 Month Lease Agreement." (Id. at 5-9.) Other references to the word "Term" include a provision that allows Debtor to terminate the Agreement by returning the Property upon the expiration of "any Term." (Id. at 4.) Most illuminating is the "Term and Termination" section, which explicitly capitalizes and defines the word "Term" as a period of one month. (Id. at 5.) It also provides that Debtor may renew the Agreement "for consecutive Terms of one month." (Id.)

The Agreement unambiguously indicates a "Term" of one month. Debtor's interpretation forces an ambiguity where none exists. The somewhat misleading title of the Agreement is not enough to render the Agreement unclear in light of the plain text of the full Agreement. Nowhere does the Agreement refer to the 48-month term Debtor advocates—at most, any confusion regarding the length of a term is thanks to poor drafting that does not reach the level of ambiguity.

Several points support the Court's reading. First, the Agreement unambiguously defines a "Term" as a period of one month and discusses multiple "Terms" as if the Agreement contemplates more than one, rather than a single 48-month term. Debtor

cannot rely solely on headings where the specific, operative language of the Agreement consistently and clearly indicates renewable terms of one-month periods. See Restatement (Second) of Contracts § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language…"). Second, Debtor's reading of the Agreement would render the Agreement nonsense. If the term was for 48 months, after completion of payments for that 48-month term, Debtor would own the Property outright and Debtor's right to terminate the Agreement "after the expiration of a Term" would be meaningless. (Claim No. 3 at 4.) Third, and further cutting against Debtor's argument, the title of the Agreement itself—"48 Month Lease Agreement"—has a modifying subtitle below it, indicating that the Agreement is "(Month to Month)." The Court cannot selectively read only the heading of the Agreement and turn a blind eye to the remainder of the Agreement. When read in its entirety, the Agreement unambiguously designates a one-month term.

With the meaning of a "Term" settled, the Court now turns to whether the Agreement passes the threshold requirements of KRS § 355.1-203(2). In this case, the Agreement passes the threshold test. Debtor was required to make two non-refundable lease payments upon signing the Agreement and any renewals of the "Term" of the Agreement require Debtor to make the lease payment in advance. Further, the provisions of the Agreement clearly state that Debtor may terminate the Agreement only "by voluntarily surrendering or returning the [Property] in good repair upon expiration of any

9

Term." (Claim No. 3 at 4.) In other words, Debtor has no power to terminate the Agreement before a "Term" expires; she may terminate the Agreement only after completing a "Term."

Once it is established that Debtor has no right to early termination of the Agreement, only one of the elements listed in clauses (a) through (d) of KRS § 355.1-203(2) is required to expose a lease as a security agreement in disguise. The parties presented no evidence to the Court regarding the economic life of the Property. Accordingly, the Court will not speculate on it and makes no findings as to the elements of clauses (a) through (c). KRS § 355.1-203(2)(d) will be the Court's focus.

"Compliance with the lease agreement," as used in KRS § 355.1-203(2)(d), simply means the completion of the immediate term of the Agreement. See <u>Delphi Auto. Sys., LLC v. Capital Cmty. Econ./Indus. Dev. Corp., Inc.</u>, 434 S.W.3d 481, 485 (Ky. 2014). Under the Agreement, Debtor does not have the option to become the owner of the Property for no additional consideration or nominal additional consideration at the end of a "Term." Rather, to become the owner, Debtor would have to pay a purchase payment equal to the sum of 52 percent of the difference between the total cost of the Property ($6,739.20) and the aggregate lease payments, defined as the sum of all payments Debtor had made over the course of renting the Property, plus any unpaid fees and applicable sales tax. (Claim No. 3 at 6.) The dispositive fact here is that the Agreement provides that Debtor could not

10

own the Property after the completion of the immediate "Term" without paying a substantial pay-off amount. To become the owner of the Property, Debtor would have to renew and comply with the lease agreement dozens of times, not only once. See <u>Delphi Auto. Sys., LLC</u>, 434 S.W.3d at 484-5 (finding KRS § 355.1-203(2)(d) satisfied where lessee became owner of goods at the expiration of a single 84-month term). As such, the Agreement does not have the elements of a security agreement.[8]

For the reasons stated above, Cardinal's objection to the confirmation of Debtor's chapter 13 plan is **SUSTAINED**. The Agreement is a lease and Debtor must assume or reject it under 11 U.S.C. § 365.

Debtor will have the option to modify her chapter 13 plan in light of this Order, provided that any modification to Debtor's chapter 13 plan must be filed with the Court on or before <u>April 29, 2019</u>. **IT IS SO ORDERED.**

Michele J. Kim
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 28th day of March, 2019.

---

[8] Because the Agreement is a lease, KRS § 355.2A-106 is applicable and requires that Georgia law govern interpretation of the Agreement because Debtor resides in Georgia. However, as noted herein, the result is the same under the applicable laws of both Kentucky and Georgia. The Agreement is a lease and is not ambiguous.